# Haines, Jones & Cadbury Co., Appellant, *v.* Edwin P. Young.

*Rules of court—Interpretation thereof—Appeal.*

Every court is the best judge of its own rules, and will not be reversed for any construction unless it is manifestly erroneous.

The trial judge having declared what the interpretation of a rule of court is, where there is a plea of set-off, the appellate court will not go outside of the bill of exceptions in search of something to convict the court of error, the appellant having failed to ask to have the precise rule included in the bill of exceptions. Such an assignment is defective in that it does not comply with the rules of the Superior Court.

*Set-off—Unliquidated damages—Measure of.*

A defendant may set off unliquidated damages arising ex contractu from any bargain whenever they are capable of liquidation by any known legal standard. Damages incident to defective construction of certain articles manufactured and sold for a specific purpose may be measured by the cost of repairing the injury.

Argued Dec. 16, 1899. Appeal, No. 206, Oct. T., 1899, by plaintiff, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1896, No. 677, on verdict for defendant. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by RICE, P. J.

Assumpsit to recover a balance of $229.51 on book account for goods sold and delivered.

It appears from the evidence that among the goods sold and delivered were seven uprights or legs of the value of $15.75. There was evidence by the defendant tending to show that these uprights or legs were manufactured for him by plaintiff for the expressly indicated purpose of supporting certain marble slabs used in the formation of the partitions of a toilet room, and that by reason of the alleged defective construction of one of the said uprights the defendant suffered damages amounting to $255.50 or $25.99 in excess of plaintiff's claim.

At the trial defendant's counsel made the following offer to prove by the witness on the stand, the defendant, Edwin P. Young, that he had sustained damages by reason of the alleged defective construction of the uprights furnished to him by plaintiff, the offer and ruling thereon being as follows:

[Mr. Hoffman: I propose to prove by this witness that he was the contractor for the erection of plumbing work in the Hotel Walton; that he went to the plaintiffs in this case and explained to them what he wanted in the nature of these legs; and that they undertook to manufacture for him a leg that would support this marble; that the legs came to him billed as seven legs to support marble of this size; that one of the legs broke and demolished a large quantity of marble that had already been erected, to replace which he was required to pay the sum of $255.50.

Mr. Carr: I object to this testimony under the pleas in this case of non assumpsit, set-off and payment, as no notice of special matter has been filed in this case, as required by the rule of court; or, I mean to say it was not served on me and I presume it was not filed.

Objection overruled. Exception for the plaintiff.

The rule of court upon which the foregoing objection was based is No. 30 and is as follows:

"Sec. 8. Any defense, legal or equitable, that might heretofore have been specially pleaded or given in evidence under equitable pleas, shall be admissible under the plea of the general issue, upon notice given at least fifteen days before the day set for trial."

"Sec. 9. Notice of special matters of defense or counterclaim shall contain a specific averment of facts sufficient to constitute a good legal or equitable defense. Copies of such notice shall be filed of record and also served on the plaintiff or his attorney of record, at least fifteen days before the day set for trial. In default of such notice the defense shall be confined to matters strictly admissible under the plea filed."

"Sec. 16. When the defendant claims a set-off or counterclaim, unless the matter be fully and specially set forth in the notice of special matter; or, when he intends to defalk his own account or claim against the plaintiff's demand or any part of it, he shall give a full and particular notice in writing of such intended set-off or counterclaim, at least fifteen days before the day for which the cause is set down for trial, or he shall not be allowed to give in evidence any matter of set-off or counterclaim not particularly set forth in the notice."] [1]

[The Court: I think this evidence is admissible under the

plea of set-off. The rule seems to be that under a plea of set-off, if you desire notice you must make a rule for it.

Mr. Carr: I now object to the testimony unless Mr. Hoffman proposes to follow his offer by testimony to the effect that Mr. Young has paid Messrs. Jacoby & Sons, the marble workers who replaced the marble work in question, for replacing that marble.

Mr. Hoffman: I will say that Mr. Young has not paid for this marble. I have here Mr. Jacoby, the president of the corporation, the Keystone Marble Works, that furnished the marble, to swear that they have a bill against Mr. Young for it, and indeed have demanded payment within a very few days. I will prove that he is called upon to pay it, and that Mr. Jacoby is to-day demanding payment of Mr. Young.] [2]

The plaintiff submitted among others the following points:

[2. A contractor and subcontractor are independent actors, and the defendant in furnishing Jacoby & Company with uprights was in the position of being a vendor and not being a manufacturer making uprights to order, but a dealer furnishing them ready made. There was no implied warranty that they would work satisfactorily, and the defendant, therefore, was not liable for damages caused by any defect in said uprights, if you should believe them to have been defective; and having suffered no legal damages, the defendant cannot set off the price paid for the marble which was broken. *Answer:* The second point is declined.] [3]

[3. If the jury believe that the relation between the defendant Young and Jacoby & Company was not that of contractor and subcontractor, but that of master and servant, and that the defendant, because of the breaking of the upright, had to purchase other materials and to pay for additional labor, in order to complete his contract at the Hotel Walton, then the jury are instructed, the goods having been ordered by description, that there was no warranty that they should answer the particular purpose for which they were ordered, even though that particular purpose were made known to the plaintiff; and the defendant cannot avail himself of set-off claimed by him unless he has shown that the goods did not answer the description. *Answer:* The third point is declined as stated.] [4]

[4. Under all the evidence your verdict should be for the plaintiff. *Answer :* Declined.] [5]

Defendant submitted among others the following points :

[4. That in the absence of an express warranty, the goods furnished to the defendant by the plaintiff should be reasonably fit and suitable for the purpose for which they were designed, and if they were not, and the defendant by reason thereof has sustained damage to an amount equal to or greater than the plaintiff's claim against the defendant, then the jury must find for the defendant. *Answer :* That is affirmed.] [9]

[5. That where a workman for a full and adequate consideration undertakes to manufacture a certain article, knowing where it is to go, and what work it is expected to do, and then so carelessly and negligently constructs said article that it is not able to do the work expected and breaks, damaging adjacent property, he is liable for the resulting damage. *Answer :* That is affirmed, subject to the rule of damages which I have already given you.] [10]

The learned court charged the jury in part as follows :

[The question of fact which you have got to determine by your verdict is this : Was the article which was supplied by the plaintiff to the defendant fit for the purpose for which it was furnished?] [11] . . . .

[You may banish from your mind all technicalities of the law and come down to that simple question, on which the testimony differs very much indeed, in which at least there is an apparent conflict, and if you cannot reconcile it you have got to decide between it. Did this happen, as the different witnesses say it did, because one length of gas pipe inside of the tubing was too short, and two threads of the support tore off. Or, did it happen because the back support was insufficient and it pressed forward and tore everything to pieces and toppled down. There has been testimony about that and you will have to settle it by your verdict. I have ruled and I think that under this sale if you believe the testimony of the defendant's witnesses he is entitled to set off the damages which arose.] [12] . . . .

[The measure of damages, that is, the rule by which you are to estimate the damages, if you find for the plaintiff and against the defendant, is this : it is the amount of money necessary to

put the work in as good condition as it was before the accident, that is all. That is simple enough, and you have had some testimony about that. You have had testimony of how much it cost to put this marble work back; and as you decide this question of fact you will also have to decide the other question. If you think the whole amount claimed by the defendant is correct under the evidence, then you will find a certificate in his favor for the amount he states. If you find it was worth, under the evidence, a less amount, you will so determine by your verdict.] [13]

Verdict was for defendant with a certificate in his favor for $255.50. Plaintiff appealed.

*Errors assigned* were (1, 2) to rulings on evidence, reciting same. (3–5) Refusal of plaintiff's points, reciting same. (9, 10) Affirming defendant's fourth and fifth points, reciting same. (11–13) To portions of the judge's charge, reciting same.

*George Wentworth Carr,* for appellant.—The defendant should not have been permitted to give in evidence his alleged loss through the breaking of the marble partitions and the necessity of providing new ones, for the reason that no notice of such special matter of defense was ever given to the plaintiff, as required by the rules of court of Philadelphia county: Rule 30, sec. 8, 9; Steiner v. Dime Savings Bank, 98 Pa. 591; Lovegrove v. Christman, 164 Pa. 390.

As to the plea of set-off, it is further provided by the rules of court: Rule 30, sec. 16.

Notice of special matter intended to be offered in evidence must be given under the rule of court, notwithstanding that an affidavit of defense has been filed, setting forth in substance the matter offered in evidence: Sullivan v. Johns, 5 Wharton, 366.

It has been repeatedly held that a set-off is in substance a cross-action, and a cross-demand must be complete when the action was instituted: Gunnis v. Cluff, 111 Pa. 512.

A defendant cannot set off notes indorsed by the plaintiff and held by the defendant, but which did not mature until after suit brought: Hotchkiss v. Roehm, 181 Pa. 65.

No rule is more firmly imbedded in our jurisprudence than that which governs the rights of vendors and purchasers in an ordinary contract of sale of personal property. In such a contract the vendor is subject to no implication of a warranty of the quality of the article sold: Warren v. Phila. Coal Co., 83 Pa. 437; Smith v. Baker, 40 Law Times (N. S.), 261; Emmerton v. Mathews, 7 Hurl. & Nor. 586.

If a person contract with the owner of a lot to build, erect and complete a building thereon, and by reason of a defect in the soil, the building falls down before it is completed the loss falls upon the contractor: The Superintendent and Trustees v. Bennett, 27 N. J. L. 513.

And this is so even if the owner of the ground has agreed to put it into fit condition for building: Stees v. Leonard, 20 Minn. 494.

The principle which controlled the decision of the cases referred to rests upon a solid foundation of reason and justice. It regards the sanctity of contracts. It requires parties to do what they have agreed to do. If unexpected impediments be in the way, and a loss must ensue, it leaves the loss where the contract places it. If the parties have made no provision for a dispensation, the rule of law gives none: Dermott v. Jones, 69 U. S. 1.

A manufacturer who sells an article known to have been ordered for a particular purpose does not impliedly warrant it will fulfill the purpose intended, where that article is one which the vendor regularly makes, and not for that occasion and purpose alone: McCray Refrigerator Co. v. Woods, 99 Mich. 269.

And this is so, even if the thing purchased has to be constructed for the vendee: Seitz v. Brewers' Association, 141 U. S. 510.

The distinction above brought out in Seitz v. Brewers' Association is the same as has been recognized in Pennsylvania in the cases of Port Carbon Iron Co. v. Groves, 68 Pa. 149, and Jarecki Mfg. Co. v. Kerr, 165 Pa. 529.

If any further authority could be needed to sustain the plaintiff's position, it is found in two cases which were decided on the principle that " if an order be given for a specified chattel of a recognized kind or description, and the article is supplied, there is no warranty that it will answer the purpose described

or supposed although intended and expected to do so:" Goulds
v. Brophy, 42 Minn. 109; Wisconsin Red Pressed Brick Co.
v. Hood, 54 Minn. 543.

*Edwin D. Hoffman*, for appellee.—This case is squarely
within the four corners of Erie City Iron Works v. Barber, 102
Pa. 156.

OPINION BY RICE, P. J., April 23, 1900:

This was an action of assumpsit upon a book account for
goods sold and delivered. The pleas were non assumpsit, set-
off, payment, etc. The defendant filed an affidavit of defense
in which he alleged, that he was the contractor for the plumb-
ing of a certain building; that he ordered from the plaintiff
seven legs which were designed to support a number of marble
partitions between the water closets in the said building, which
purpose was fully explained to the plaintiff, whereupon the
plaintiff undertook to manufacture said legs or supports in a
manner proper for the purpose aforesaid; that thereupon it
became the duty of the plaintiff to so construct them that they
should be fit for the purpose for which they were intended, but
notwithstanding the plaintiff thoroughly understood the pur-
pose, it did by its servants negligently and carelessly con-
struct certain of them and so that the defendant could in no
way detect the fault; that the plaintiff delivered said legs
or supports to the defendant, the charge for the same appear-
ing in the copy of the book entries attached to plaintiff's state-
ment; that while the workmen of the defendant, who are
thoroughly skilled and used all due care in the erection of the
partitions, were setting them in place, one of the legs or sup-
ports, by reason of the negligent construction aforesaid, broke,
causing the partition resting upon the same to fall against the
remaining partitions, by reason of which the seven marble par-
titions together with the three marble slabs forming the backs
and one marble slab forming the end of said closets were totally
destroyed causing the plaintiff a loss of $255.50, so that, instead
of the defendant owing the plaintiff the sum of $229.51 as
claimed in the plaintiff's statement, the plaintiff was indebted to
the defendant in the sum of $25.99, for which amount he would
ask a certificate at the hands of the jury upon the trial of this

cause. This was the only defense alleged. On the trial the plaintiff offered in evidence its statement of claim containing a copy of its book entries, and rested. The defendant then made an offer to prove, in substance, the facts alleged in his affidavit of defense. This was objected to because, to quote the words of the objection, " No notice of special matter has been filed in this case, as required by the rule of court; or, I mean to say it was not served on me, and I presume it was not filed." In overruling the objection the learned trial judge remarked: " I think this evidence is admissible under the plea of set-off. The rule seems to be that under a plea of-set off, if you desire notice, you must take a rule for it."

Every court is the best judge of its own rules, and will not be reversed for any construction unless it is manifestly erroneous and injurious: Carpet Co. v. Latimer, 165 Pa. 617; Mendenhall v. Mendenhall, 12 Pa. Superior Ct. 290, and cases cited. The trial court being more familiar with its rules and the practice under them than the appellate court can be, a specification assigning error in the violation of one of its rules will not be considered where it is not clearly made to appear that there was such violation: Morrison v. Nevin, 130 Pa. 344. Even if we were to attempt to construe Rule 30, which seems to be the one relied on, we ought to have before us all its sections, before declaring that the section (16) printed in the appellants' paper book applies to cases where the defendant has pleaded " set-off," as he may under the act of 1887. We do not say that an affidavit of defense setting forth particularly in what the defence consists obviates the necessity of giving notice of special matter, or of the intended set-off or counterclaim, where the rule of court unequivocally requires such notice to be given: Sullivan v. Johns, 5 Whart. 366; Erwin v. Leibert, 5 W. & S. 103; Finlay v. Stewart, 56 Pa. 183; Xander v. Commonwealth, 102 Pa. 434. It is to be borne in mind, however, that the purpose of such rule is to prevent surprise, and if, as alleged at bar and not denied, the same evidence was admitted on the former trial of the case without objection, it is morally certain that the plaintiff was not surprised by its introduction on the second trial. We are not to be understood as deciding that this was a sufficient reason for disregarding the rule, if there be such a rule; it is nevertheless satisfactory

to know that if there was technical error it was not injurious. But we overrule the assignment upon the ground that it does not clearly appear that the court violated its own rules in admitting the evidence. The court below having declared what the rule is where there is a plea of set-off we do not feel called upon to go outside the bill of exceptions in search of something to convict the court of error. In view of the declaration of the trial judge he should have been asked to include in the bill of exceptions the precise rule governing the practice. We might have dismissed the assignment for the reason that it is not in strict conformity to our rules: Arnold v. Blabon, 147 Pa. 372.

The defendant was the general contractor for the work described in the affidavit of defense, and employed Jacoby & Company for a lump sum to do part of it, namely, to furnish and set the marble, the defendants to furnish the metal supports therefor. Without fault of Jacoby & Company, as the jury found, one of the supports gave way before the work was completed, in consequence of which the marble slabs fell and were broken. The plaintiffs' contention is that Jacoby & Company were bound by their contract to replace the slabs and complete the work for the sum originally agreed to be paid. We cannot assent to this proposition. Jacoby & Company had nothing to do with the selection of the supports. They did not buy them from the defendant. The argument that there was between the defendant and Jacoby & Company the relation of vendor and vendee is ingenious but not convincing. We cannot see that the rule caveat emptor applies. Jacoby & Company could not perform their part of the contract unless the defendant furnished proper supports. Their engagement was to exercise due care and skill in the use of them and to do the work in a skilful and workmanlike manner, and if they discharged that obligation they were not liable as for a failure to perform, if the support selected and furnished by the other party had a latent defect which rendered performance with that instrumentality impossible. This is not the case of a person undertaking absolutely to construct a particular thing according to plans, and wholly out of materials, furnished by him, or of a failure because of accident or the happening of something unexpected for which neither party was responsible. The falling of the marble slabs

was not owing to a failure to do the work as agreed, but to a cause over which Jacoby & Company at no time had control, and for which, according to the verdict of the jury, they were not responsible.     Nor was it a mere accident.     The destruction of the work they had done resulted from the failure of the defendant to perform his part of the contract with them.     In that sense it resulted from a cause for which, as between them, the defendant was responsible.     None of the cases cited by the appellant's counsel rules the precise question presented here; nor do we say that these cases rule it; but they are pertinent: Campbell v. Gates, 10 Pa. 483; Swan v. Lytle, 1 Pittsburg Rep. 177; Filbert v. Philadelphia, 181 Pa. 530; Kellogg Bridge Co. v. Hamilton, 110 U. S. 108.     We conclude that, when, pursuant to the defendant's express direction, Jacoby & Company got other marble and put it in the place of that which had fallen and been broken, the defendants' liability to pay them the reasonable cost of the extra work and materials was complete.

The next inquiry is as to the right of the defendant to set off against the plaintiff's demand the loss that he sustained by reason of the negligent and defective construction of the supports.     Before proceeding to a discussion of this question we remark that this was not an attempt to set off a debt which the defendant owed to Jacoby & Company for which the plaintiff was primarily liable to the latter, but to set off the damages the defendant sustained by reason of the plaintiff's breach of contract.     The fact that the measure of these damages was the cost of repairing the injury does not make the payment of the debt incurred for that purpose a condition precedent to the defendant's right of recovery.     We cannot see that the plaintiff is concerned with that matter.     Therefore, the second assignment is overruled.

As to the general proposition that in Pennsylvania a defendant may set off unliquidated damages arising ex contractu from any bargain whenever they are capable of liquidation by any known legal standard, we need only refer to Hunt v. Gilmore, 59 Pa. 450.     There was no difficulty in liquidating the defendant's damages, if under the evidence he was entitled to damages.

The plaintiff contended on the trial, and contends here, that it was not liable for the damages sustained by the defendant in consequence of the defective construction of the supports, be-

.cause there was no warranty on its part that they should answer the particular purpose for which they were ordered, even though that particular purpose was made known to it at the time they were ordered. The defendant's contention is that there was an implied promise or undertaking that the articles would be reasonably fit and proper for the purpose for which the plaintiff undertook to make them. The evidence bearing upon this particular question was not in conflict The plaintiff's version of the transaction did not differ materially from that of the defendant, which was to the effect that the plaintiff corporation was a manufacturer; that when he ordered the supports or legs he explained to its salesman the purpose for which he desired them, and stated to him the dimensions of the marble slabs to be supported; that the salesman said "they could do that," but as he knew nothing about the mechanical part, he would call in the foreman of the manufacturing department; that the defendant made the same explanation to the latter of what was to be supported; that the foreman said "they made lots of those things," and drafted it out on a small piece of paper; whereupon the defendant gave them the order to make the legs. So far as appears, the defendant gave no direction as to their construction, excepting as to the thickness of the pipe constituting the "core," and we do not understand it to be claimed by either party that this had anything to do with the accident. The question whether or not it happened in consequence of the defective construction of one of the supports was in dispute and was submitted to the jury fairly. The court could not have affirmed the plaintiff's fifth and eighth points without declaring at the same time that there was neither an implied engagement that the thing ordered would be fit for the purpose intended, nor that it would be free from latent defects. We do not think the court would have been justified in taking this position. Without attempting to give all the differently worded statements that have been made of the rule of law applicable to the sale of things to be manufactured, we take that statement chosen by the appellent's counsel: "The rule invoked is that, where a manufacturer contracts to supply an article which he manufactures, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment of the manufacturer, the law implies a promise or undertaking on his part that the article so

manufactured and sold by him for a specific purpose, and to be used in a particular way, is reasonably fit and proper for the purpose for which he professes to make it, and for which it is known to be required; but it is also the rule, as expressed in the textbooks and sustained by authority, that where a known, described and definite article is ordered of a manufacturer, although it is stated by the purchaser to be required for a particular purpose, still, if the known, described and definite thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer: " Seitz v. Brewers' Refrigerating Machine Co., 141 U. S. 510. In the case cited the contract was to supply a " No. 2 size refrigerating machine as constructed by the said party of the first part." The machine so designated was delivered and put in operation. It was held that the only implication in regard to it was that it would perform the work the described machine was made to do, and as it was not pretended that there was any failure in such performance (in this respect differing from the present case), the plaintiff was not permitted to recover. But the court took pains to say that the case was not one of an alleged defect in the process of manufacture (in this respect also differing from the present case), nor of presumptive and justifiable reliance by the buyer on the judgment of the vendor rather than his own, but of a purchase of a specific article manufactured for a particular use, and fit, proper and efficacious for that use, but in respect to the operation of which, in producing a desired result under particular circumstances, the buyer found himself disappointed. So in Jarecki Manufacturing Co. v. Kerr, 165 Pa. 529, the defendant ordered of a dealer a particular kind of pipe known in the trade as " Pennsylvania tubing," and the kind of pipe ordered was delivered. It was held that the case came within the second branch of the rule above stated. In Port Carbon Iron Co. v. Groves, 68 Pa. 149, this was said to be the law: " If a thing be ordered of the manufacturer for a special purpose, and it be supplied and sold for that purpose, there is an implied warranty that it is fit for that purpose. This principle has been carried very far. It must, however, be limited to cases where a thing is ordered for a special purpose, and not applied to those where a special thing is ordered, although this be intended for a special purpose." For, as was said in

the text-book from which the foregoing was taken, if the thing is itself specifically selected and ordered, there the purchaser takes upon himself the risk of its effecting its purpose : 1 Parsons on Contracts, 586, 587.

Accordingly, if the buyer gives an order to a manufacturer or dealer for "your patent hopper and apparatus to fit up my brewing copper with your smoke-consuming furnace," (Chanter v. Hopkins, 4 M. & W. 399) ; or for "your challenge augur outfit for boring wells," (Goulds v. Brophy, 42 Minn. 109) ; or for a "No. 2 size refrigerating machine as constructed" by the manufacturer, (Seitz v. Brewers Co., supra) ; or for a quantity of " Pennsylvania tubing," a well known article of commerce in which he deals, (Jarecki Mf'g Co. v. Kerr, supra) ; or for a quantity of "your No. 1 and No. 2 foundry pig iron " (Beck v. Sheldon, 48 N. Y. 365), in these and like cases there is no implied engagement on the part of the seller that the specified article shall serve the special purpose for which the buyer obtains it : Burdick on Sales, 100.   Having bought a specified article under its trade name, he is deemed to have relied on his own judgment. This case is not parallel with any of those cited by the appellant's counsel.   The defendant did not order an article by its trade name, nor a definite existing chattel specifically described or open to his inspection, but a thing to be manufactured that would support the burden that was to be put on it.   The plaintiff through its foreman professed its ability to make an article fit for the purpose explained to him.   This was the thing that the plaintiff undertook to make.   The defendant had a right to trust, and under the evidence the plain inference is that he did trust, to the judgment and skill of the plaintiff.   It is not to be presumed that he trusted to his own judgment merely because he did not exact an express warranty.   Such an argument impeaches the whole doctrine of implied warranty for there can be no sale of personal property in which the buyer may not, if he chooses, insist on an express warranty against latent defects : Kellogg Bridge Co. v. Hamilton, 110 U. & S. 108.   We are of opinion that the case is fairly within the first branch of the rule as stated in Seitz v. Brewers Co.   And, if the plaintiff's engagement was that the things ordered should be reasonably fit and proper for the purpose for which they were to be made, it extended to latent defects which might have been guarded against by the

exercise of reasonable skill and diligence in the process of manufacture : Kellogg Bridge Co. v. Hamilton, supra, Randall v. Newson, L. R. 2 Q. B. D. 102; Erie City Iron Works v. Barber, 102 Pa. 156; s. c., 106 Pa. 125, at pages 140, 144.

The correctness of the plaintiff's bill was not disputed, and the jury should have been instructed that if they found that the defendant was entitled to a set-off they should give a certificate in his favor for the amount by which it exceeded the plaintiff's claim. Instead of doing that they were told to give a certificate for the whole amount of the set-off to which they found him entitled. This was a mistake, but it may be corrected without a retrial of the case. We find no other substantial error. Some of the defendants' points might have been refused as inapplicable to a case of this kind, but in the view we have taken and expressed as to the nature of the contract and the implied engagement of the plaintiff their affirmance did no harm.

The judgment in favor of the defendant is reduced from $255.50 to $25.99 and as thus modified the judgment is affirmed.