Hobart Manufacturing Company, Appellant, *v.* Rodziewicz.

Argued October 21, 1936.

 Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES,
JJ. 

*Charles Hunsicker,* with him *David E. Rattin,* for appellant.

*Gerald G. Dolphin,* with him *John C. Lesniak,* for appellee.

OPINION BY BALDRIGE, J., January 29, 1937:

The plaintiff, under a written contract, dated December 4, 1934, sold to defendant a dough mixer, described therein as a "Hobart Model M-80," together with certain equipment consisting of a bowl, dough arm and beater. The consideration of $978.50 was to be paid in monthly installments. The contract provided, inter alia, as follows:

"It is agreed this order shall not be subject to countermand or rescission by vendee, and that it covers all agreements concerning the transaction of every name and nature and no representation or agreements made by an agent, or any other person not included herein, shall be binding."

The machine was delivered to defendant, January 4, 1935, and was put in operation a week later. It proved

to be unsatisfactory and defendant offered to return it. The plaintiff refused to accept the machine and confessed judgment against the defendant, by virtue of a warrant of attorney embodied in the contract. A rule was thereupon granted at the instance of the defendant to show cause why the judgment should not be opened, depositions were taken, argument had, and thereafter the court made the rule absolute. From this decision plaintiff appeals.

It appears in the depositions that before the contract was entered into plaintiff's agent contacted the defendant and tried to sell him a Peerless high-speed mixer, which he said he could not afford to purchase, that he wanted a "dough brake." The agent told him that the Hobart mixer "makes better (bread) than dough brake," and showed him a circular issued by the plaintiff containing pictures of large size loaves of bread made by plaintiff's machine, and statements that it made "better bread" and "more loaves," and mentioned other advantages to be gained in its use. Plaintiff's agent, called as its witness, corroborated the defendant's testimony as to the representations made, and testified further that he told the defendant that the company guaranteed the truth of all the statements contained in the circular.

The defendant paid two monthly installments, January 21st and February 25, 1935, on account of the purchase price, but refused to make further payments as he said in the meantime that the machine was not working satisfactorily as it had spoiled five "batches" of dough, as the loaves made therefrom were small, flat and heavy, although he had followed the instructions given and the agent helped him in the first baking. The plaintiff company, in response to a letter defendant wrote on March 13, 1935, had their Mr. Lowe, within the next day or two, supervise the making of the bread, but right results were not obtained and he advised de-

fendant to write to the company's engineer to see what was wrong with the machine, but the engineer never appeared.

The defendant contends that he was justified in repudiating the contract, as the machine did not make bread as represented and it was not a dough brake, which is a machine through which the dough passes after it is thoroughly mixed "to dry out some of the gastric gases from the dough in order to puff it up and then when it hits the oven, absorbs the air."

The principal questions raised by this appeal are (1) whether this contract excludes proof of an implied warranty of fitness for particular purposes; (2) did the court abuse its discretion in opening judgment?

Authorities are in accord in holding that where the contract specifically excludes all agreements not contained therein, express warranty or inducing representations are not admissible in evidence: See *Hauer v. Martin,* 284 Pa. 407, 131 A. 187; *Hill & MacMillan, Inc. v. Taylor et al.,* 304 Pa. 18, 155 A. 103; *Madison-Kipp Corp. v. Price Battery Corp.,* 311 Pa. 22, 166 A. 377. There is a considerable conflict of authority whether such a provision excludes evidence to establish an implied warranty. The following cases support the view that a provision such as is embodied in this contract excludes proof of an implied as well as an express warranty, on the theory that such a stipulation, in the absence of fraud, should be held to apply to the implication which the law reads into the contract, as well as any special agreement between the parties outside the terms of the contract: *F. A. North Co. v. Beebe* (N. J.), 168 A. 632; *Rockwood & Co. v. Parrott* (Ore.), 19 P. (2d) 423; *Laitner Plumbing & Heating Co. v. McThomas* (Mo.), 61 S. W. (2d) 270; *Lasher Co. v. La Berge* (Me.), 135 A. 31; *S. F. Bowser Co. v. Birmingham* (Mass.), 177 N. E. 268.

In *Madison-Kipp Corp. v. Price Battery Corp.,* supra

(311 Pa. 22, 166 A. 377), cited by the appellant, the buyer relied upon a statement, which the court held was not a warranty, in the advertisement published by the seller. The sale of the machine was made solely under its trade name, and without representations as in the case at bar.

The weight of authority, and we think the sounder reasoning, supports the view that while parol evidence is not admissible to prove an express warranty, it is admissible to show circumstances tending to establish an implied warranty.

In *White Co. v. Francis,* 95 Pa. Superior Ct. 315, as in the case at bar, judgment had been entered by confession under a warrant in a bailment lease. We held that a contract providing that the written agreement constituted the entire contract did not preclude the defendant from relying upon an implied warranty that the truck in question was reasonably fit for the purpose for which it was manufactured and leased.

The doctrine is well established that when a buyer relies on the judgment of a seller who knows the purpose for which the property is to be used, there is an implied warranty that the property is reasonably fit for the purpose for which it was bought, and it is not excluded by a written contract eliminating any warranty that may have been made by the seller. The implied sales warranty arises independently and outside of the contract and is imposed by operation of law. See *Bekkevold v. Potts* (Minn.), 216 N. W. 790, 55 C. J. p. 715 §701; 59 A. L. R. 1165 and annotations on page 1223.

In *Meyer v. Packard Cleveland Motor Co.* (Ohio) 140 N. E. 118, the plaintiff relied on some newspaper advertisements and circulars describing defendant's rebuilt trucks as "guaranteed," and claimed that the defendant impliedly warranted the truck to be fit for the purpose intended. A contract between the parties pro-

vided "That all promises, verbal agreements, or agreements of any kind pertaining to this purchase not specified herein, are hereby expressly waived." It was held that this provision did not negative or nullify the representations set forth in defendant's advertisements. To the same effect is *Campbell v. Corley* (Ore.) 13 P. (2d) 610; *Hughes v. Natl. Equip. Co.* (Iowa), 250 N. W. 154; *Lutz v. Hill-Diesel Engine Co.* (Mich.), 237 N. W. 546; *Minneapolis Steel Co. v. Casey Land Agency* (N. D.), 201 N. W. 172; *Liquid Carbonic Co. v. Coclin* (S. C.), 159 S. E. 461; *J. B. Colt Co. v. Bridges* (Ga.), 132 S. E. 889; *S. F. Bowser & Co. v. McCormack,* 243 N. Y. S. 442, 230 App. Div. 303.

It is stated in Williston on Contracts, vol. 2, §643, p. 1244:

"The basis of the parol evidence rule is that it must be assumed that when the parties contracted in regard to a certain matter and reduced their agreement to writing, the writing expressed their whole agreement in regard to that matter. This reasoning is obviously inapplicable to a situation where an obligation is imposed by law irrespective of any intention to contract. Such is frequently the case with warranties. Therefore, if a buyer is induced by positive statements of fact to enter into a written contract for the purchase of goods, there seems no reason why these statements should not be admitted in evidence."

See, also, 29 Columbia Law Review 805 (1929).

The depositions established that the parties, by their contracts, did not intend to render nugatory the representations in the advertisements; they were descriptive of the work the mixer would do. In the belief that the plaintiff was dealing fairly with him, defendant had the right to rely on these statements as true and effective. He was not to get merely a "Hobart" mixer, but one that would make better and larger loaves of bread than he had been producing by hand.

The general rule is that there can be no implied warranty as to fitness in the sale of an article under its trade name. The Sales Act of 1915, May 19, P. L. 543, par. 4 of section 15 (69 PS §124), provides: "In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose." Numerous cases interpreting this section under the Uniform Sales Act, which is identical to this section in our act, hold that there may be an implied warranty, however, in connection with a sale made by an agent, and that parol evidence is admissible to establish facts from which the law will imply a warranty to show its breach, and this rule is upheld in not all, but many cases where the contract includes a provision to the effect that the writing contains all the terms of the agreement. See Uniform Laws Annotated Sales Act, pp. 108, 110.

Assuming that "Hobart Model M-80" is a trade name, as alleged, it does not follow that there may not be an implied warranty of fitness, if the circumstances indicate that the buyer informed the seller of the purpose for which the article was desired and that there was a reliance upon the seller's judgment, especially where the trade name was inserted in the sales contract merely as a convenient description: *Campbell v. Corley*, supra; *Sperry Flour Co. v. De Moss* (Ore.), 18 P. (2d) 242; *Battle Creek Bread Wrapping Co. v. Paramount Baking Co.* (Utah), 39 P. (2d) 323. In 55 C. J. §721, p. 757, it is stated: "The fact that an article has a trade name does not negative the existence of an implied warranty of fitness for a particular purpose when it is purchased, not by name, but for a particular purpose and supplied for that purpose; and where the buyer relies not upon the trade-mark but upon the seller's judgment, there is an implied warranty of fitness for a particular purpose." Further authorities may be found

in the note in 90 A. L. R. 410, under the subject of "Implied warranties on sale of article by trade name, trademark or description," where it is stated:

"Under either rule, the major question in determining the existence of an implied warranty of fitness for a particular purpose is the reliance by the buyer upon the skill and judgment of the seller to select an article suitable for his needs, and the question as to whether the article was described by its trade name or trademark is not conclusive if the other conditions exist which would raise an implied warranty of this character."

If one *selects* some article by its trade name, even though the buyer has communicated his particular purpose of its use, there is no implied warranty of fitness for that particular purpose: *Port Carbon Iron Co. v. Groves*, 68 Pa. 149; *Jarechi Mfg. Co. v. Kerr*, 165 Pa. 529, 30 A. 1019; *Tinius Olsen Test. Mach. Co. v. Wolf Co.*, 297 Pa. 153, 146 A. 541; *Madison-Kipp Corp. v. Price Battery Corp.*, supra.

But in the case at bar, it is alleged that the purchaser relied, not upon the trade name of the mixer, but upon the representation made and the judgment of the seller as to the results that could be obtained by its use.

That brings us to the second proposition, namely, that the lower court abused its discretion in opening the judgment, as (a) the notice of rescission was not made within a reasonable time; (b) that the rescission was partial as the defendant offered to return the mixer only and not the rest of the equipment; (c) that the rescission, even if properly made, was waived and rendered ineffectual by defendant's use of the machine thereafter.

(a) Defendant claims that notice of rescission was given within several weeks after he had used the machine. It must be remembered, however, that in the meantime he was endeavoring to get favorable results

and that he was making complaints of the failure of the machine to the agent who had promised to have the plaintiff's engineer come and examine it, and that arrangements were also made that another baker come to try his hand in using the machine. The delay to a large extent was due to efforts made by the defendant to make the machine answer his purposes and fulfill the representations made. It could be found as a fact that the rescission was made with reasonable promptness after the defendant was convinced that the machine was not as represented. No definite rule can be laid down as to what is a reasonable time in such circumstances; it depends upon facts varying under the different conditions: *Tinius Olsen Test. Mach. Co. v. Wolf Co.*, supra; *Kaminsky v. Levine*, 106 Pa. Superior Ct. 278, 161 A. 741.

Under the facts presented, it cannot be said, as a matter of law, that the delay was fatal to the defendant's right to have the judgment opened.

(b) We think the contention that the rescission was partial is not entitled to much consideration as there was no evidence that the defendant did not offer to return the additional equipment. Furthermore, there is considerable doubt whether the bowl, dough arm and beater were part of that particular machine.

(c) The appellant does not attempt to support the alleged waiver of the rescission of the contract by an argument, and we find no merit in that contention.

A careful consideration of this entire record convinces us that this cause is of such a character that the issues of fact involved should be left to a jury, under proper instructions, and that, therefore, there was no abuse of discretion in the trial judge's opening the judgment.

Order of the learned court below is affirmed.